UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RENAISSANCE NUTRITION, INC.,

          Plaintiff,

v.

GEORGE JARRETT and DAN KURTZ,

          Defendants.

**DECISION AND ORDER**
08-CV-800S

## I. INTRODUCTION

This is the second diversity action filed in this Court by Renaissance Nutrition, Inc. ("Renaissance") against two of its former employees, George Jarrett and Dan Kurtz. In the first, Renaissance alleged that Defendants violated a provision of their employment contract prohibiting them from engaging in competitive business practices after resigning from Renaissance.[1] In this action, Renaissance alleges that Defendants violated a separate provision of the contract, the "non-recruitment" or "anti-raiding" clause, which was meant to restrict Defendants from encouraging other Renaissance employees to leave the company. Presently before this Court is Defendants' Motion for Summary Judgment. (Docket No. 49.) For the following reasons, Defendants' motion is denied.

## II. BACKGROUND

**A.**     **Facts**

Because this Court has already detailed many of the facts relevant to this case in its previously issued Decision and Order, see Renaissance Nutrition Inc., v. Jarrett, No. 06-

---

[1] On July 27, 2011, this Court issued a Decision and Order denying Defendants' Motion for Summary Judgment in that case, No. 06-CV-380S. A final pre-trial conference is scheduled for March 27, 2012.

1

CV-380S, 2011 WL 3235642, at *1-6 (W.D.N.Y. July 27, 2011), it will only provide a brief background of the facts here. Renaissance is a vitamin and pre-mix company serving the dairy industry. (Plaintiff's Rule 56 Statement of Facts ("Pl.'s State.") ¶ 10; Docket No. 57.)[2] In short, Renaissance alleges that Jarrett and Kurtz, two former top-level employees at Renaissance, resigned in tandem with plans to develop a rival company, Cows Come First. They further allege that Defendants actively recruited Don Burkard, Mark Einink, and Mark Wegner, all former Renaissance employees, to join them in their new venture.[3] (Id. ¶¶ 7, 51-54) Each of these three employees, after receiving training in nutrition, management, and sales, acted as "distributors" for Renaissance – they were essentially salesmen who promoted and distributed Renaissance's product. (Id. ¶¶ 11, 12.) Renaissance alleges that Defendants, in displacing these employees, violated the "non-recruitment" clause in each of their contracts, which provided:

> At no time for a period of five (5) years immediately following the termination of his employment (contract or payroll) with Renaissance, whether said termination is occasioned by Renaissance, [Defendant], or the mutual agreement of said parties, will he for himself or on behalf of any other person, firms, partnerships, corporations or company call upon any salesman or distributors of Renaissance for the purpose of selling animal feed, mineral or vitamin pre-mixes, which directly or indirectly compete with the companies products nor directly or indirectly for himself or on behalf of or in conjunction with any other persons, firm, partnership, corporation or company solicit, divert or take away any such distributors or salesman of Renaissance. The above-stated covenant and agreement shall

---

[2] To the extent that they have not controverted each other's statements, this Court has accepted facts included in Defendants' and Plaintiff's Statement of Facts. See Local Rule 56(a)(2) (statements of material fact that are not specifically controverted by the non-moving party are deemed admitted).

[3] Renaissance also alleged that Defendants recruited *David* Burkard (not to be confused with his brother, *Don* Burkard), Craig Ingalls, Mike Maloney, and Larry Bock. But Renaissance has indicated it will stipulate to the dismissal of its claims regarding these employees. (See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, pp. 4-5, n. 4; Docket No. 56.)

> be limited in geographical area to the market served by Renaissance at the termination of said employee.[4]

(Defendants' Rule 56 Statement of Facts ("Def's State."), Exhibit A; Docket No. 49-1.)

Defendants signed this agreement in 1991 at the behest of Craig Brown, the founder of Renaissance, who required that all members of his "advisory group," an inner circle of top employees, sign the agreement. (Def's State. ¶¶ 8, 17; Pl.'s State. ¶ 25.)

### III. DISCUSSION

#### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation

---

[4] Defendants each signed identical contracts in 1991. In 2002, both Defendants executed amendments to those contracts, not effecting the substance of the non-recruitment clause, for which they were compensated $50,000. (Pl.'s State. ¶ 3,4.)
   At the time Jarrett and Kurtz left, the geographical reach of Renaissance's market included twenty states. (Defendants' Rule 56 Statement of Facts ¶ 26.)

omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.     Defendants' Motion for Summary Judgment**

Defendants make four arguments in support of their motion. First, they argue that the recruitment clause is invalid because it does not protect a legitimate interest. Second, they argue that the clause is invalid in that it is too broad in geographic and temporal scope. Third, they argue that it is invalid because it was procured through coercion. Finally, in the alternative, they argue that Defendants did not violate the clause.

Plaintiffs respond by arguing that New York courts have upheld recruitment clauses like the one at issue here;[5] that the clause was proper in scope because it only limited Defendants from purloining its employees, not from engaging in business generally; that Defendants signed the provision voluntarily; and that it is for a jury to determine whether Defendants violated the clause.

**1.     Legitimate Interest**

There appears to be no New York Court of Appeals case discussing the applicable standard for non-recruitment covenants. In fact, both parties can point to only one New York case discussing the standard, Lazer Inc. v. Kesselring, 13 Misc. 3d 427, 823 N.Y.S.2d

---

[5]Both parties agree that New York law applies, sufficiently establishing that state's law as applicable to this case. See Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) (because parties relied on New York law, such implied consent was sufficient to establish choice of law).

4

834 (Sup. Ct. Mon. Cnty. 2005), where the court found that the standard for non-recruitment covenants should be the same as the more common non-compete covenants.

Although non-recruitment agreements are distinct from non-compete agreements, Renaissance concedes that the restraint at issue in its case is a post-employment covenant and, as such, it is subject to the "overriding requirement of reasonableness" as applied to restrictive covenants, like non-compete agreements, which are directed at employee conduct. See Reed, Roberts Assoc. v. Strauman, 40 N.Y.2d 303, 307, 353 N.E.2d 590, 386 N.Y.S.2d 677 (1976); BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999). In evaluating the reasonableness of these covenants, New York courts generally apply a three prong test where the restraint must (1) be no greater than is required for the protection of the legitimate interest of the employer, (2) not impose undue hardship on the employee, and (3) not injure the public. BDO Seidman, 93 N.Y.2d at 388-89.

Thus, it is settled for the purposes of this motion that as a threshold matter, Renaissance must bring forth sufficient evidence that the covenant protected a legitimate interest.[6] Defendants assert that New York courts have held that legitimate interests are limited to three areas: an employer's trade secrets, its confidential customer lists, and its unique or extraordinary employees. See Reed, Roberts Assoc., 40 N.Y.2d 303; Riedman Corp. v. Gallager, 48 A.D.3d 1188, 1189, 852 N.Y.S.2d 510 (4th Dep't 2008).

Renaissance does not argue that Burkard, Einink, or Wegner encroached on its right to trade secrets or confidential customer lists. Instead, Renaissance argues that the employees were not "fungible," seeking to enforce the covenant on the grounds that they

---

[6] Defendants do not argue that the restraint caused undue hardship or injured the public.

5

expended resources in training and educating these employees and that replacing them would be costly and burdensome. Yet, under New York law these reasons do not render a non-recruitment restriction valid. See Lazer, 13 Misc. 3d at 433 (collecting cases and finding that reasons like those listed above are insufficient as a matter of law).

However, Renaissance correctly points out that New York courts have also held that an employer has a legitimate interest in the protection of client relationships developed at the employer's expense. See BDO Seidman, 93 N.Y.2d at 392; Marsh USA Inc, v. Karasaki, No. 08 Civ. 4195 (JGK), 2008 WL 4778239, at *16 (S.D.N.Y. Oct. 31, 2008) (applying BDO Seidman and finding plaintiff-employer had a likely chance of success on the merits because an employer has a legitimate interest in the protection of client relationships acquired during the course of employment.) Defendants argue that such a factor should not be considered under New York law, claiming that BDO Seidman specifically limited those interests to three areas.[7] But such a conclusion misinterprets that case. After a thorough survey of the case law, including BDO Seidman, it becomes clear that this interest must be considered in making a determination about the reasonableness

---

[7]The court in BDO Seidman does cite Reed, Roberts Associates, decided 24 years earlier, where the New York Court of Appeals limited legitimate interests to three areas. More recently, and after BDO Seidman, the Fourth Department has stated that legitimate interests are "*limited to* the protection of an employer's trade secrets or confidential customer lists, or protection from an employee whose services are unique or extraordinary." See Riedman, 48 A.D.3d at 1189 (emphasis added). But, these findings are untenable in the face of BDO Seidman, which further developed the holding in Reed, Roberts Associates by finding that employers have a legitimate interest in the protection of its client base. Moreover, it instructed courts to focus on the "particular facts and circumstances" of restrictive covenants. 93 N.Y.2d at 390. Such a context based approach undermines the conclusion that the analysis should be confined to predetermined areas.

Yet, whether this interest should be considered alone or as a subgroup of the "unique" factor remains unclear. *Compare* Ticor Title Inc. Co. Cohen, 173 F.3d 63, 72 (2d Cir. 1999) (applying New York law and finding that an employee is *unique* where the employee's relationship with the customers is such that there is a substantial risk that the employee may be able to divert all or part of the business) *to* Cenveo Corp. v. Diversapack LLC, No. 09 Civ. 7544, 2009 WL 3169484, at *7 (S.D.N.Y. Oct. 1, 2009) (applying New York law and finding that the protection of the plaintiff company's client base is a *stand-alone* legitimate interest).

of a restraint.

However, Renaissance cannot simply state that its restraint is valid because it has a legitimate interest in protecting its clients. Without more, such a blanket rule would obviate the need for any reasonableness determination because businesses could invoke the rule in almost any circumstance. Instead, New York case law suggests that Renaissance must make an enhanced showing that its interests in protecting its clients outweigh Defendants' interests in free competition. Although not in chronological order, the cases detailed below seemingly build upon one another and demonstrate that Renaissance must show that: (1) the employees diverted by Defendants posed a substantial risk that if they left, their customers would follow, (2) the departed employees would engage or did engage in competitive business with Renaissance, and that (3) it provided substantial resources and assistance in cultivating the customer base such that it would be unfair to allow employees to steal those customers to compete with it.

Ticor Title provides an example of the first element or factor. There, the court granted the plaintiff-company a preliminary injunction based on a non-compete clause because a previous employee took 75% of the clients with him when he left and the defendant had already solicited one customer to follow him to his new venture. 173 F.3d at 72.  The court in Ticor Title relied on Service Systems Corp. v. Harris, 41 A.D.2d 20, 23-24, 341 N.Y.S.2d 702 (4th Dep't 1973), which held, "an employer has sufficient interest in retaining present customers to support an employee covenant where the employee's relationship with the customers is such that there is a substantial risk that the employee may be able to divert all or part of the business."

This Court looks to Lazer – the one New York case analyzing a non-recruitment

clause – in support of the second factor. There, the court found, "[m]ost important, plaintiff fail[ed] to raise an issue of fact that [recruited employees' company] and it are *competitors* in any sense of the word other than that any two employers would like the services of a good employee." Lazer, 13 Misc. 3d at 433 (emphasis added). Thus, Lazer suggests that one factor courts should consider, indeed the most important factor, is whether the employees were recruited to compete with the plaintiff-company.

Finally, BDO Seidman culminates this analysis. It found that if the plaintiff company helped to cultivate the customers at issue, it has a legitimate interest in protecting them. BDO Seidman, 93 N.Y.2d at 391-92 ("It follows from the foregoing that BDO's legitimate interest here is the protection against Defendant's competitive use of client relationships which BDO enabled him to acquire through his performance of [his job] for the firm's clientele during the course of his employment.").

Renaissance provides sufficient facts to demonstrate that it supported Don Burkard, Einink, and Wegner in developing client relationships, that these employee diverted customers to Cows Come First, and that they engaged in a competitive business, using Renaissance's former customers against them. The restraint at issue was clearly meant to protect against the very circumstance alleged to have occurred – former employees resigning and encouraging their co-workers to join them in a competitive business. Under BDO Seidman, Service Sys. Corp, and Lazer, such a protection is reasonable and legitimate. See Kelly v. Evolution Markets, Inc., 626 F. Supp. 2d 364, 374, n. 9 (S.D.N.Y. 2009) ([New York] case law implies that if the solicitation [of a co-employee] is directed by a competitor . . . the restriction is for a legitimate business purpose.").

Morever, this Court must be cognizant of the fact that the standard for reasonableness, articulated above, is taken from the non-compete context. An important

factor that courts consider in that context is the "strong public policy militating against the sanctioning of a person's loss of the ability to earn a livelihood." Ticor Title, 173 F.3d at 70 (citing Karpinski v. Ingrasci, 28 N.Y.2d 45, 49, 320 N.Y.S.2d 1, 268 N.E.2d 751 (1971)). But of course, a non-recruitment clause, as opposed to a non-compete clause, does not infringe on an employees ability to engage in an occupation, but merely infringes on his ability to recruit former co-workers to engage in competitive businesses. Defendants are free, under this provision of the contract, to undertake any occupation they choose. Therefore, the non-recruitment clause is inherently more reasonable and less restrictive than its counterpart, lending further support to its legitimacy.

Consequently, this Court finds that the covenant protected Renaissance's legitimate interest in maintaining its client base. It is accordingly valid and enforceable on this ground. Defendants' motion is consequently denied.

### 2.     Temporal and Geographical Scope

As noted above, restrictive covenants must be no greater than necessary for the protection of a legitimate interest. See BDO Seidman, 93 N.Y.2d at 388-89. Having determined that Renaissance's interest is legitimate, the question turns to whether the covenant is no greater than necessary. In this vein, the covenant must be reasonably limited in temporal and geographical scope. Gilman & Ciocia, Inc. v Randello, 55 A.D. 3d 871, 872, 866 N.Y.S.2d 334 (2d Dep't 2008). Defendants argue that the five-year limitation spanning twenty states is unreasonable.

Plaintiffs distinguish the covenant at issue here from the more common non-compete agreements and argue that this question is unripe for summary judgment.

This Court agrees. Neither party has presented any case law considering the proper

temporal and geographical scope of non-recruitment clauses. Although Defendants do argue that covenants much shorter in length have failed as a matter a law, those cases concerned non-compete agreements. As discussed above, while similar, such covenants are not identical to non-recruitment agreements and the two differ in at least one significant manner. Thus, this Court finds that without any guiding case law, a deeper factual inquiry would not only be prudent, but also may prove necessary to determine the reasonableness of the restraint. As such, Defendants' motion for summary judgment on this ground is denied.

### 3. Overreaching and Coercion

Covenants like the one at issue here are unenforceable if procured through inappropriate means. See Scott, Stackrow, & Co. v. Skavina, 9 A.D.3d 805 (3d Dep't 2004). Such inappropriate means include "overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct." Id. at 807.

Defendants argue that the agreement is invalid because it was procured through coercion and overreaching. In support of this argument, they point to several facts: it was presented to them after an all-day meeting; their roles, responsibilities, and compensation did not change after the agreement was signed; they were provided only one day notice; and they risked demotion if they did not sign.

Plaintiffs respond by noting that Defendants stayed with the company for fourteen years after they signed the agreement and that an employer's forbearance from discharging employees has been found to be adequate consideration. They also note that although the 2002 amendments, for which Defendants were each paid $50,000, did not affect the non-recruitment clause, that clause remained a part of the contract at that time.

Finally, although Renaissance admits that Brown was clear that Defendants' agreement to the covenant was necessary if they wished to maintain their status in the company, it notes – without dispute from Defendants – that at no time were Defendants' jobs as a whole in jeopardy, just their elevated role in the company.

In Zellner v. Stephen D. Conrad, M.D. P.C., 183 A.D.2d 250, 256, 589 N.Y.S.2d 903 (2d Dep't 1992), the court found that "[b]ecause in at-will employment the employer has the right to discharge the employee (or, as here, an independent contractor providing services under a similar arrangement), without cause, and without being subject to inquiry as to his or her motives forbearance of that right is a legal detriment which can stand as consideration for a restrictive covenant." (Internal citation omitted).[8] Such a finding supports the conclusion that Renaissance's continued employment of Defendants demonstrates a lack of coercion. Defendants, on the other hand, do not point to a single case where acts like those undertaken here were found to be coercive. With no legal authority on point, this Court is not prepared to rule, as a matter of law, that Renaissance's actions were so inappropriate as to warrant invalidating the contract, especially given the unconvincing reasons provided by Defendants.

**4.      Evidence of a Breach**

Alternatively, Defendants argue that there is no genuine issue of material fact showing that they violated the non-recruitment covenant. This Court finds differently.

---

[8] Defendants argue that Zellner is no longer good law in light of the Court of Appeals' decision in BDO Seidman. Even if that were true, the holding in BDO Seidman does not change the outcome of this case. There, the court noted that courts can strike whole non-compete agreements if they are based on coercion or overreaching. But the BDO Seidman court refused to strike the whole non-compete agreement at issue there (opting instead to carve out the unenforceable provisions) partially on the basis that the agreement was connected to a promotion, not the employee's initial or even continued employment. See 93 N.Y.2d at 395. Because the same is true here – Defendants' retention of an elevated status in the company was predicated on the covenant, not their jobs in general – such a conclusion enhances Renaissance's argument that the agreement was not a product of coercion.

First, there is no dispute that Don Burkard, Einink, and Wegner have conducted business with Defendants and that Wegner is now a "profit participant" in Cows Come First, Defendants' company. Further, Renaissance has submitted sufficient proof to withstand summary judgment that these employees left Renaissance at the behest of Defendants.

In short, regarding Don Burkard and Einink, a reasonable jury could conclude that Defendants played a role – and thus breached their non-recruitment covenant – in a series of suspicious correlated events whereby Don Burkard and Einink both suddenly lost customers to Cows Come First, resigned from Renaissance shortly thereafter, waited a year for their non-compete clauses to expire, and then joined Cows Come First to reunite with their old, supposedly lost customers.

The evidence is at least equally sufficient concerning Mark Wegner. First, there is the issue concerning Defendant Jarrett's laptop purchase. Jarrett bought three computers and subsequently tried to load those computers with nutritional information important to Renaissance's and Cows Come First's business. He then furnished one of those laptops to Mark Wegner. According to Renaissance, this shows that Jarrett, Kurtz, and Wegner, were working together to develop Cows Come First. Further, Renaissance notes Wegner's suspicious decision to resign on April 14, 2006, only months before Defendants resigned. Wegner eventually worked out a deal with Renaissance to stay, but then resigned again in 2007. He is now a profit partner in Cows Come First. Renaissance also points to numerous communications between Defendants and Wegner and Wegner's attempt to secure a nutritional product, exclusive to Renaissance, for Jarrett.

In sum, Renaissance has put forth a reasonable interpretation of these events, namely that Jarrett and Kurtz breached the non-recruitment covenant by conspiring with

each other and Wegner to leave Renaissance and start Cows Come First. The resolution of such a claim is for the trier-of-fact, not for this Court on a summary judgment motion. See Sec. Ins. Co. of Hartford, 391 F.3d at 82-83 ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.").

Defendants motion on this ground is consequently denied.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that the non-recruitment covenant is valid and binding and that genuine issues of material fact exist as to whether the covenant was reasonable in geographic and temporal scope and whether Defendants breached the covenant; their summary judgment motion is denied in its entirety.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 49) is DENIED.

SO ORDERED.

Dated: January 7, 2012
       Buffalo, New York

                                       /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                              Chief Judge
                                      United States District Court